# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.O., by and through her parents and guardians ad litem, MIKHAIL and KELLY OGAWA,<br><br>                                   Plaintiff,<br><br>v.<br><br>SAN DIEGUITO UNION HIGH SCHOOL DISTRICT,<br><br>                                   Defendant. | Case No.:  22-cv-01703-H-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**<br><br>[Doc. No. 22.]<br><br>**(2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND**<br><br>[Doc. No. 23.]<br><br>**(3) DENYING PLAINTIFF'S MOTION TO STRIKE**<br><br>[Doc. No. 27.] |

This is an appeal brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 14000 et seq.  On September 22, 2023, Plaintiff K.O. ("Plaintiff" or "K.O."), by and through her parents and guardians ad litem, Mikhail and Kelly Ogawa,

("Parents"), filed a motion for summary judgment appealing an administrative decision rendered by Administrative Law Judge Christine Arden ("ALJ") of the California Office of Administrative Hearings ("OAH"). (Doc. No. 22.) On October 27, 2023, Defendant San Dieguito Union High School District ("Defendant" or "the District") filed its opposition to Plaintiff's motion and cross-moved for summary judgment, seeking partial reversal of the ALJ's decision. (Doc. No. 23.) That same day, Defendant also filed two objections to Plaintiff's motion for summary judgment.[1] (Doc. Nos. 24, 25.) On November 17, 2023, Plaintiff filed a reply in support of her motion and moved to strike Defendant's objections. (Doc. Nos. 26, 27.) On December 8, 2023, Defendant filed a reply in response to Plaintiff's motion to strike. (Doc. No. 28.)

After thorough consideration of the administrative record and the parties' written submissions,[2] the Court affirms the ALJ's decision and grants Plaintiff additional remedies. Accordingly, the Court grants Plaintiff's motion for summary judgment, denies Defendant's cross-motion for summary judgment, and denies Plaintiff's motion to strike.

## BACKGROUND

### A.  Statutory Background

Congress enacted the IDEA to ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; and to protect the rights of children with disabilities and their parents. 20 U.S.C. § 1400(d)(1); (Doc. No. 19-19 at 31–32; AR 892–

---

[1]  The Court considers Defendant's objections to Plaintiff's briefing to the extent they are procedurally proper and relevant in resolving the issues before the Court. Accordingly, the Court declines to strike the District's objections.

[2]  The Court notes that both parties object to certain pleadings and argue such pleadings violate the Court's orders and the Southern District's local rules. (See Doc. Nos. 24, 25, 26, 28.) The Court is not persuaded that either party violated the Court's orders or rules. Nor has either party suffered any prejudice because of their respective briefing or filing choices.

93.).[3]   The IDEA provides state and local agencies with federal funding to assist in educating children with disabilities, conditioned on compliance with certain goals and procedures.  20 U.S.C. § 1412(a); Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1469 (9th Cir. 1993).

The IDEA requires that disabled students receive a FAPE through a cooperative process between parents and schools that culminates in the creation of an individualized education program ("IEP").  Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 53 (2005). "The IEP is the centerpiece of the statute's education delivery system for disabled children."  Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 580 U.S. 386, 391 (2017) (quotations omitted).  Every IEP "must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide," Schaffer, 546 U.S. at 53, and must be reasonably calculated to enable the child to receive "meaningful" education benefit.  N.B. v. Hellgate Elementary Sch. Dist., ex rel. Bd. of Dirs., Missoula Cnty., Mont., 541 F.3d 1202, 1212–13 (9th Cir. 2008); see U.S.C. § 1414(d)(1)(A).

An "IEP team" composed of parents, teachers, and experts develops the IEP.  20 U.S.C. § 1414(d)(1)(B).  When parents and educators disagree about a child's IEP, the IDEA provides for informal dispute resolution procedures and mediation.  Id. §§ 1415(e), (f)(1)(B)(i).  If these measures fail, the aggrieved party is entitled to a "due process hearing" before the State or local educational agency.  20 U.S.C. § 1415(f).  "[A]t the conclusion of the administrative process, the losing party may seek redress in state or federal court." Endrew F. ex rel. Joseph F., 580 U.S. at 392.

---

[3]  The Court's CM/ECF stamp obscured the pagination of the Administrative Record ("AR"), filed on CM/ECF as docket numbers 19 through 19-20.  In their briefing, the parties cite to the AR as paginated by the OAH.  At the Court's request, the parties provided an unobscured copy of the AR, showing the pagination imprinted by the OAH. Accordingly, the Court provides parallel citations to the AR as filed on CM/ECF, (Docs. Nos. 19 through 19-20), and as paginated by the OAH, (pages 1 through 2231).

**B.      Factual Background**

At the time of the administrative hearing, Plaintiff was a thirteen-year-old student in the seventh grade.  (Doc. No. 22 at 5.)  She qualifies for special education and related services under the handicapping conditions of "Other Health Impairment" and "Speech and Language Impairment" pursuant to the IDEA.  (Doc. No. 19-19 at 34; AR 895.)  Plaintiff has been diagnosed with epilepsy, attention deficit hyperactivity disorder ("ADHD"), and anxiety.  (Doc. No. 19-19 at 34; AR 895.)  These disabilities significantly interfere with her ability to focus, learn, and otherwise access her education.  (Id.)  Her most recent triennial assessment from the 2019-2020 school year summarized her overall cogitative ability scores as below average.  (Doc. No. 19-19 at 35; AR 896.)  K.O.'s cognitive processing deficits, anxiety, attention and executive functioning deficits, and language-based weaknesses have negatively impacted her progress in the general education curriculum.  (Id.)

On July 1, 2021, during the extended school year program, Plaintiff matriculated to the San Dieguito Union High School District and became a student of the Defendant.  (Doc. No. 19-19 at 38; AR 899.)  This appeal concerns a dispute that arose between Plaintiff and the District regarding which nonpublic school ("NPS") would implement K.O.'s 2021-2022 IEP.

**1.  K.O.'s Schooling from 2018 to 2021**

During the 2018-2019 school year, Plaintiff's fourth grade year, K.O. began receiving specialized academic instruction and support in speech, occupational therapy, and counseling outside of her general education classes.  (Doc. No. 19-19 at 35; AR 896.)  Even with these additional supports, K.O. struggled with her academics and peer relationships.  (Id.)  Accordingly, her IEP team determined that a general education setting could no longer support her needs and the team began exploring a NPS placement.  (Doc. No. 19-19 at 35–36; AR 896–97.)

In the 2019-2020 school year, the IEP team completed its annual review of K.O.'s IEP and recommended placement at Excelsior Academy ("Excelsior"), a very small NPS

located in La Mesa, California.  (Doc. No. 19-19 at 36; AR 897; <u>see also</u> Doc. No. 19-20 at 258; AR 1160:16-17.)  Excelsior is approximately a one-hour drive from Plaintiff's home.  (Doc. No. 19-20 at 746; AR 1641:2-6.)  The IEP team also considered placement at Banyan Tree Academy Foundation and Mount Helix, but ultimately determined Excelsior was the best fit for K.O. because of its small size and quiet, calm campus.  (Doc. No. 19-19 at 35–36; AR 896–97.)  On November 20, 2019, Parents consented to K.O.'s placement at Excelsior.  (Doc. No. 19-19 at 36; AR 897.)  K.O. began attending Excelsior in January 2020 and she completed her fifth-grade year there in June 2020.  (<u>Id.</u>)

Prior to the 2020-2021 school year, K.O.'s family relocated to Encinitas, California, and the Encinitas Union School District ("EUSD") assumed funding for K.O.'s continued placement at Excelsior.  (Doc. No. 19-19 at 37; AR 898.)  On November 16, 2020, K.O.'s IEP team held its annual review and continued her placement at Excelsior for her sixth-grade year.  (<u>Id.</u>)

Students in the EUSD matriculate into the San Dieguito Union High School District when they enter seventh grade.  (Doc. No. 19-20 at 950; AR 1838:9-12.)  On June 7, 2021, in anticipation of her transition into the District, EUSD convened an IEP team meeting to discuss K.O.'s upcoming move to middle school.  (Doc. No. 19-19 at 38; AR 899.)  District representative, Nathan Molina ("Molina"), attended the transition meeting.  (<u>Id.</u>)  Upon her matriculation to the District, Molina became K.O.'s assigned case manager and he assumed responsibility for convening IEP meetings, overseeing Excelsior's implementation of the IEP, and conveying the District's offer of a FAPE to the IEP team.  (<u>Id.</u>)  Molina had not previously worked with K.O. and observed her for approximately 10 to 15 minutes at Excelsior.  (<u>Id.</u>)  At the conclusion of the June 7 meeting, the IEP team made no changes to the November 16, 2020 IEP and continued K.O.'s placement at Excelsior for her seventh-grade year.  (<u>Id.</u>)  On July 1, 2021, Plaintiff matriculated to the San Dieguito Union High School District and became a student of the District.  (Doc. No. 19-19 at 38; AR 899.)

///

///

### 2.  The November 15, 2021 to January 24, 2022 IEP Process

On November 15, 2021, K.O.'s IEP team, which included Parents, Parents' advocate, Molina, Marta Leyva ("Leyva"), Excelsior's principal, and other Excelsior staff, began its annual review of K.O.'s IEP.  (Doc. No. 19-19 at 39; AR 900.)  Leyva stopped the meeting short because Excelsior staff was not prepared to report on K.O.'s present levels of performance.  (Id.)  On November 29, 2021, the IEP team reconvened and discussed K.O.'s present levels of performance and progress on various goals; however, the team did not complete her IEP.  (Id.)  On December 13, 2021, the IEP team met again and continued reviewing K.O.'s progress and goals.  (Doc. No. 19-19 at 40; AR 901.)  At this meeting, the IEP team discussed K.O.'s anxiety and possible interventions to reduce her anxiety.  (Id.)  The IEP team did not cover new goals, services, or an updated offer of a FAPE, requiring the team to reconvene for a fourth meeting.  (Id.)

Prior to the third IEP meeting, Parents became interested in exploring a different NPS for K.O., specifically the Winston School ("Winston").  (Doc. No. 19-19 at 40; AR 901.)  Parents were interested in Winston because they believed an NPS with a larger campus such as Winston would foster K.O.'s continued growth and independence, and it was closer to their home.  (Doc. No. 19-20 at 1; AR 903.)  On December 14, 2021, Parents asked Molina for a referral to Winston and inquired about placement.  Molina refused Parents' request, remarked that Winston was not a therapeutic environment, and mentioned that Parents could set up a trial for K.O. as a privately placed student.  (Doc. No. 19-19 at 40; AR 901.)  From January 10, 2022 to January 14, 2022, K.O. completed a trial week at Winston.  (Doc. No. 19-19 at 41; AR 902.)  K.O.'s trial at Winston went well by all accounts.  (Id.)  Following the trial week, Parents asked Molina if the District would offer placement at Winston.  (Id.).  Molina did not respond directly but stated that the IEP team must still complete K.O.'s annual IEP.  (Id.)

The IEP team reconvened on January 21 and 24, 2022.  (Id.; Doc. No. 19-20 at 1; AR 903.)  At the January 21, 2022 meeting, the team discussed special factors, statewide assessments, and new proposed goals.  No one discussed the need for a therapeutic program

for K.O.  (Id.)  At this time, Parents told the team they were interested in changing the NPS provider from Excelsior to Winston.  (Id.)  The meeting ended before the team could further discuss NPS placement or complete the IEP.  (Id.)

On January 24, 2022, at the final IEP meeting, Molina offered K.O. placement at San Diego Center for Children ("SDCC"), another NPS in San Diego.  (Doc. No. 19-20 at 904.)  Molina explained that Excelsior was no longer a FAPE option for K.O. based on the identification of increasing needs.  (Doc. No. 19-20 at 2; AR 904.)  During the discussion of services, the IEP team had increased her minutes in counseling and occupational therapy and added parent counseling services.  (Id.)  Due to her anxiety, Molina determined that K.O. needed a NPS with an embedded therapeutic program.  (Id.)  Other members of K.O.'s IEP team, including Parents, Parents' advocate, and Leyva were shocked at the offer of SDCC and disagreed with Molina that K.O. needed an embedded therapeutic program. (Id.)  At the IEP meeting, all members of K.O.'s IEP team expressed the opinion that SDCC was an inappropriate NPS for K.O.  (Id.)  Specifically, Parents' advocate and Leyva believed that SDCC was unsuitable for K.O. because SDCC primarily served children with significant behavioral problems such as acting out, elopement, and loud or aggressive behavior.  (Doc. No. 19-20 at 3; AR 905.)  At the hearing, they testified that exposure to this type of behavior would trigger K.O.'s anxiety and inhibit her ability to make progress on her academic and social goals.  (Id.)

In response to the other IEP team members' objections, Molina proposed a referral to SDCC, offered a tour and trial of SDCC to K.O, and proposed further evaluation of Plaintiff's academic and social/emotional functioning.  (Doc. No. 19-20 at 4; AR 906.)  Molina also referred Parents to their procedural rights.  (Doc. No. 19-20 at 1237–38; AR 2124:20–2125:5.)  In the meantime, Molina explained that K.O. would remain at Excelsior. (Doc. No. 19-20 at 4; AR 906.)  At the end of the January 24 meeting, Parents did not agree to placement at SDCC, but consented to the referral and the tour.

### 3. Excelsior's Closure and Parental Placement at The Winston School

In early February 2022, Excelsior informed Plaintiff and the District that it was

closing effective February 28, 2022.  (Doc. No. 19-20 at 9; AR 911.)  On February 14, 2022, Parents toured SDCC without Molina and determined SDCC was not a good fit for K.O.  (Doc. No. 19-20 at 558–60; AR 1453–55.)  Specifically, Plaintiff's mother testified that an SDCC administrator informed Parents that a significant number of SDCC students exhibit outward, noncompliant, or aggressive behaviors requiring teachers to physically restrain students in the classroom about once per month.  (Doc. No. 19-20 at 561; AR 1456.)  Parents believed exposure to these kinds of behaviors would increase K.O.'s anxiety and inhibit her ability to learn.  (Id.)  Accordingly, Parents declined Molina's offer of sending K.O. for a trial at SDCC.  (Doc. No. 19-20 at 562; AR 1457.)

On February 25, 2022, considering Parents' refusal of the District's FAPE offer of SDCC, Molina offered Plaintiff four options in a prior written notice: (1) begin attending Banyan Tree Foundation Academy on March 1, 2022 as a "like" replacement for Excelsior; (2) attend SDCC; (3) attend private school and receive limited support from the District; or (4) exit special education and related services and return to the general education program at her local public school.  (Doc. No. 19-20 at 9; AR 911.)  Plaintiff declined Banyan Tree Foundation Academy as a "like" replacement for Excelsior because the IEP team considered it two years prior and determined it was not a good fit.  (Id.)  Plaintiff chose option three, and K.O. began attending Winston on March 1, 2022.  (Id.)  On March 1, 2022, Parents gave their written consent to all parts of the 2021 IEP, except for the offer of placement at SDCC, and provided the District with written notice that they would be privately placing K.O. at Winston and seeking reimbursement for the cost of Winston from the District.  (Id; Doc. No. 19-20 at 10; AR 912.)  Since March 1, 2022, K.O. has been attending Winston.  (Id.)

**C.   Procedural Background**

On February 7, 2022, Plaintiff filed a due process hearing complaint.  (Doc. No. 19 at 8–19; AR 1–12.)  After development at a prehearing conference, the issues presented to the ALJ were as follows:

      1.     Did San Dieguito Union High School District deny Student a free appropriate

public education, or a FAPE, during the 2021–2022 school year by predetermining placement at San Diego Center for Children nonpublic school?

2.     Did San Dieguito Union High School District deny Student a FAPE during the 2021–2022 school year by offering Student placement at San Diego Center for Children nonpublic school?

(Doc. No. 19-19 at 31; AR 892.).  The ALJ conducted the due process hearing on May 24, 25, 26 and June 1 and 2, 2022.[4]  (Doc. No. 22 at 7.)  At the due process hearing, Plaintiff's mother, Leyva, and Dr. Holly Reed ("Reed"), special education director at Winston, testified on behalf of Plaintiff.  Molina and Tiffany Hazelwood ("Hazelwood"), the District's director of school and student services, testified on behalf of the District.  On June 27, 2022, the ALJ took the matter under submission, after the parties filed their written closing arguments.  On August 4, 2022, the ALJ issued a 39-page decision.  (Doc. No. 19-19 at 30; AR 891.)

On Issue 1, the ALJ found that the District failed to comply with the procedural requirements of the IDEA by predetermining its placement offer of SDCC.  (Doc. No. 19-20 at 16; AR 918.)  Accordingly, the ALJ held that the procedural violation "significantly impeded Parents' opportunity to participate in the decision-making process of developing a FAPE for Student in the IEP dated November 15, 2021 and developed [from November 15, 2021 to January 24, 2022]" and denied Plaintiff a FAPE.  (Doc. No 19-20 at 17; AR 919.)  The ALJ "reasonably inferred that Molina decided before the [January 24] meeting to offer placement at SDCC" and determined that the District's offer of SDCC constituted a "take it or leave it" offer.  (Doc. No. 19-20 at 2; AR 904.)  Specifically, the ALJ supported her finding of predetermination on two grounds.  First, she found that the record lacked any evidence of K.O.'s need for a "more therapeutic environment," which was Molina's

---

[4] At the time of the due process hearing, the OAH conducted hearings through telephonic or videoconference technology using the Microsoft Teams and Caselines applications. (Doc. No. 19 at 20–21; AR 13–14.)

primary justification for offering SDCC.  (Id.)  Second, she determined that Molina's disregard for other IEP team members' opinions that SDCC was an inappropriate placement for student and his failure to propose other alternatives constituted a "take it or leave it" offer.  (Doc. No. 19-20 at 5; AR 907.)  Thus, the ALJ determined Plaintiff was the prevailing party on Issue 1.  (Doc. No. 19-20 at 22; AR 924.)

The ALJ declined to address Issue 2 in her decision.  (Doc. No. 19-20 at 18; AR 920.)  The ALJ reasoned that "[b]ecause the evidence established [the District] predetermined the offer of placement at SDCC in the [November 15, 2021 IEP], and significantly impeded Parents' opportunity to participate in the decision-making process . . . it is not necessary to address Issue 2 in this Decision."  (Id.)  Therefore, the ALJ made no prevailing party determination regarding Issue 2.  (Doc. No. 19-20 at 23; AR 925.)

In her decision, the ALJ also awarded Parents reimbursement for the cost of privately placing K.O. at Winston.  (Doc. No. 19-20 at 18; AR 920.)  The ALJ found that Parents "acted reasonably with respect to their unilateral placement of [K.O.]" and K.O. obtained an educational benefit at Winston.  (Doc. No. 19-20 at 20, 22; AR 922, 924.)  Accordingly, the ALJ ordered the District to reimburse Plaintiff for the cost of K.O.'s tuition from March 1, 2022 through the last day of the regular 2021-2022 school year, and for the 2022 summer extended school year.  (Doc. No. 19-20 at 24; AR 926.)  The ALJ also directed the District to pay for other services, including counseling, occupational therapy, transportation, and speech and language services, in the amounts set forth on the November 2021 IEP, and conditioned the District's payment on Plaintiff providing the District with invoices for the services she received.  (Doc. No. 19-20 at 26; AR 928.)

On September 13, 2022, Plaintiff filed a motion for clarification and/or reconsideration of the ALJ's decision regarding Issue 2.  (Doc. No. 19-20 at 211–20; AR 204–13.)  On September 19, 2022, OAH issued a notice of no action and declined to clarify or reconsider the ALJ's decision.  (Doc. No. 19-20 at 230; AR 223.)

On November 1, 2022, Plaintiff filed this action, seeking partial reversal of the ALJ's decision on Issue 2 and an award of attorneys' fees and costs.  (Doc. No. 1.)  On January

6, 2023, the District answered Plaintiff's complaint and filed a counterclaim, seeking partial reversal of the ALJ's decision on Issue 1 and the award of reimbursement for tuition and related services for Parents' placement at Winston.  (Doc. No. 5.)  On May 9, 2023, the parties filed the administrative record.  (Doc. No. 19.)  On June 27, 2023, the Court issued a scheduling order setting deadlines for Plaintiff's motion for judgment on appeal, and the District's opposition and cross-motion for judgment on appeal.  (Doc. No. 20.)  On September 22, 2023, and November 27, 2023, the parties filed their merits briefs.  (Doc. Nos. 22, 23.)

## STANDARD OF REVIEW

"Judicial review under the IDEA is an odd creature in administrative law."  Los Angeles Unified Sch. Dist. v. A.O. by & through Owens, 92 F.4th 1159, 1168 (9th Cir. 2024).  The IDEA instructs a reviewing court to receive and review the record of the administrative proceeding, hear additional evidence at the request of either party, and grant appropriate relief based on the preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(c)(i)-(iii).  Thus, "[j]udicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review."  Ojai, 4 F.3d at 1471.  "Nevertheless, complete de novo review is inappropriate."  JG v. Douglas Cnty. Sch. Dist., 552 F.3d 786, 793 (9th Cir. 2008) (internal citations omitted).  Courts must give "'due weight' to judgments of education policy" when reviewing state administrative decisions.  Gregory K. v. Longview School Dist., 811 F.2d 1307, 1311 (9th Cir. 1987) (quoting Board of Educ. of Hendrick Hudson Central School Dist. v. Rowley, 458 U.S. 176, 206 (1982)).  This is because federal judges are not experts in educating children with disabilities and the IDEA does not empower district courts to "substitute their own notions of sound educational policy for those of the school authorities which they review."  Rowley, 458 U.S. at 206.  Accordingly, administrative findings that are "thorough and careful" are entitled to "particular deference."  JG, 552 F.3d at 793.

In IDEA cases, "the district court essentially conduct[s] a bench trial based on a

stipulated record." <u>Ojai</u>, 4 F.3d at 1427. "Though the parties may call the procedure a 'motion for summary judgment' in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination, not a summary judgment." <u>Capistrano Unified Sch. Dist. v. Wartenberg by & Through Wartenberg</u>, 59 F.3d 884, 892 (9th Cir. 1995). Thus, this Court treats the parties' motions as an appeal of an administrative decision and will "read the administrative record, consider the new evidence, and make an independent judgment based on a preponderance of evidence and giving due weight to the hearing officer's determinations." <u>Id.</u>; <u>see also</u> <u>E.V.E. v. Grossmont Union High Sch. Dist.</u>, No. 22-CV-941-RSH-BGS, 2023 WL 5635728, at *5 (S.D. Cal. Aug. 31, 2023) (treating cross-motions for summary judgment as an appeal of the hearing officer's administrative decision).

## ANALYSIS

In its motion for partial reversal, the District claims the ALJ wrongly decided Issue 1. (Doc. No. 23.) The District argues that the ALJ erred in finding that the District predetermined its offer of placement at SDCC. The District also disputes the ALJ's reimbursement award and argues that Plaintiff is not entitled to attorneys' fees. (<u>Id.</u>; Doc. No. 24.) In her motion, Plaintiff seeks partial reversal of the ALJ's decision regarding Issue 2. (Doc. No. 22.) Specifically, Plaintiff argues that the ALJ erred in declining to address Issue 2 in her decision. Plaintiff argues that this failure has left Plaintiff without an educational placement. Plaintiff asserts that this Court should decide Issue 2 and further find Parents' preferred NPS provider—Winston—offers K.O. a FAPE and order placement at Winston through K.O.'s IEP. Further, Plaintiff asserts that the Court should adjust the ALJ's award of reimbursement to include the cost of Parents' placement of K.O. at Winston to date. (<u>Id.</u> at 21, n. 6.) Plaintiff also requests that the Court award Plaintiff attorneys' fees as the prevailing party in both the underlying administrative hearing and this action. (<u>Id.</u> at 22–28.) The Court considers each parties' arguments in turn.

### A. **Threshold Issues**

Before turning to the merits of this appeal, the Court first addresses the District's

arguments concerning (1) the degree of deference the Court should give to the ALJ's decision; (2) the District's challenges to the ALJ's credibility determinations; and (3) the District's allegations of the ALJ's bias against it.  (Doc. No. 23 at 13–17.)

**1. Deference to the ALJ's Decision**

The District argues that the Court should not afford the ALJ's decision any deference because the ALJ appeared "confused by the entire hearing process," failed to effectively manage the remote hearing technology, improperly interrupted the proceedings, asked too many questions, and omitted or distorted certain pieces of evidence.  (Doc. No. 23 at 13–14.)  Plaintiff argues the ALJ's decision is entitled to deference because her findings were "thorough and careful."[5]  (Doc. No. 26 at 2–8.)

District courts may treat a hearing officer's findings as "thorough and careful" when the hearing officer participates in the questioning of witnesses and writes a decision "contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions."  Park, ex rel. Park v. Anaheim Union High Sch. Dist., 464 F.3d 1025, 1031 (9th Cir. 2006).  "But neither the duration of the hearing, nor the ALJ's active involvement, nor the length of the ALJ's opinion can ensure that the ALJ was "thorough and careful."  M.C. by & through M.N. v. Antelope Valley Union High Sch. Dist., 858 F.3d 1189, 1194 (9th Cir. 2017).  Courts will give deference to an ALJ's decision "when it evinces his [or her] careful, impartial consideration of all of the evidence and demonstrates his [or her] sensitivity to the complexity of the issues presented."  J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 440–41 (9th Cir. 2010) (citations omitted).

The ALJ's decision is entitled to deference.  Here, the hearing lasted five days.  The record shows that the ALJ was actively engaged in the hearing and questioned the witnesses to ensure the record contained complete information and that she understood the

---

[5] The District argues Plaintiff cannot both urge this Court that the ALJ's decision was thorough and careful and seek partial reversal as to Issue 2.  (Doc. No. 28 at 9.)  Plaintiff's position is not inconsistent.  Indeed, courts routinely affirm one part of an ALJ's decision and reverse as to other issues while also affording the ALJ's decision deference.

testimony.  That the ALJ interrupted the proceedings to confirm that she was reviewing the correct exhibit during direct and cross-examination of both parties' witnesses, especially considering the remote nature of the proceeding, speaks to her active involvement in the hearing as statutorily required.  The ALJ's dynamic participation in the hearing is not evidence of "confusion."  The parties, witnesses, and the ALJ faced occasional difficulties using Microsoft Teams and the Caselines program, but each technological issue was resolved.  Furthermore, the ALJ's 39-page decision includes numerous pages of factual background.  The ALJ discretely analyzed the predetermination issue and declined to address the second issue, citing relevant legal authority justifying her decision to abstain from deciding Issue 2.  (Doc. No. 19-20 at 18; AR 920 (citing Anchorage Sch. Dist. v. M.P., 689 F.3d 1047, 1054 (9th Cir. 2012).)  Accordingly, the Court disagrees with the District's arguments regarding the manner of the hearing.  Next, the Court turns to several discrete issues that the District raises regarding the ALJ's characterization of the factual record and weighing of the evidence.  (Doc. No. 23 at 15.)

The Court rejects the District's assertion that the ALJ "sugar-coated" Plaintiff's emailing of staff at Excelsior as evidence of her need for a more therapeutic NPS, when the ALJ received testimony that K.O.'s emailing increased due to the recent death of a family member and subsequently decreased. (Doc. No. 19-20 at 204–05; AR 1106:1–1107:3.) The District's argument that the ALJ "incorrectly held that Mr. Molina shut down the IEP team's discussion about identifying an appropriate NPS when they discussed several" misconstrues the ALJ's factual finding and the record.  (Doc. No. 23 at 17.)  The ALJ received testimony that the IEP team discussed several NPS for Plaintiff, but the ALJ concluded that Molina failed to properly collaborate with the team by summarily rejecting any NPS other than SDCC.  (Doc. No. 19-20 at 5; AR 907.)  Finally, the District argues that the ALJ ignored evidence that the District claims call the educational and professional credentials of Plaintiff's witnesses into question, but the overall administrative record and the ALJ's detailed order does not support the District's arguments.  Accordingly, the Court accords the ALJ's decision with due deference and dismisses the District's arguments as

impermissible attempts to re-weigh the evidence.

### 2. Credibility Determinations

Next, the District contends that the ALJ erred when she determined that the District's witnesses – Molina and Hazelwood – were less credible and persuasive than Plaintiff's witnesses – Leyva and Reed. (Doc. No. 23 at 15–17; Doc. No. 28 at 9; <u>see also</u> Doc. No. 19-20 at 9; AR 911.) Plaintiff argues that the ALJ's credibility determinations were proper and based on her active questioning of witnesses on key issues during the hearing. (Doc. No. 26 at 5.)

Generally speaking, "a finder of fact's determination of credibility receives deference on appeal, because access to live testimony is important to the credibility finding." <u>Ms. S. ex rel. G. v. Vashon Island Sch. Dist.</u>, 337 F.3d 1115, 1127 (9th Cir. 2003). An ALJ "who receives live testimony is in the best position to determine issues of credibility." <u>Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.</u>, 267 F.3d 877, 889 (9th Cir. 2001). Here, the ALJ supported each credibility finding in her decision with cogent analysis based on the witnesses' testimony and her personal observations and direct questioning of the witnesses.

The ALJ opined that Leyva's testimony "was extremely credible and persuasive." (Doc. No. 19-19 at 37; AR 898.) The District attacks Leyva's testimony on the basis that Levya lacks any special education credentials and the ALJ failed to consider that the nature of Leyva's work with disabled students was not as a teacher or a therapist, but as an advocate. (Doc. No. 23 at 15.) However, these facts, standing alone, do not undermine the ALJ's reasonable conclusions regarding Leyva's testimony. At the due process hearing, Leyva testified that K.O. did not require a more therapeutic or restrictive environment than the one offered at Excelsior. (Doc. No. 19-19 at 27; AR 898.) She based her opinion on her personal experience with K.O., as Leyva was one of the staff members at Excelsior who provided support to K.O. when she was anxious at school. (<u>Id.</u>) At the hearing, Leyva recounted a situation where she observed K.O.'s anxiety escalate when K.O. witnessed a homeless man in front of the school yelling angrily. (<u>Id.</u>) Regarding the

District's placement offer at SDCC, Leyva testified that due to the maladapted behaviors of students at SDCC, K.O. would be very anxious, unable to make progress on her goals, and might even regress, both socially and academically.  (Doc. No. 19-20 at 3; AR 905.)  In her decision, the ALJ noted that Leyva "answered all questions posed to her without hesitation, thoroughly, knowledgably, and confidently."  (Doc. No. 19-19 at 36–37; AR 897–898.)   Considering that the ALJ heard Leyva's live testimony and noted Leyva's candor in her decision, the Court declines to reevaluate the ALJ's determination that Leyva was a credible witness.

Regarding Reed, whose testimony focused on the SDCC campus and its student body, the ALJ determined that she "testified very credibly at [the] hearing" as she "responded to questions without hesitation, confidentially, and in detail."  (Doc. No. 19-20 at 7; AR 909.)  The ALJ supported her finding that Reed's testimony was more credible than the District's witnesses regarding SDCC by noting that Reed had worked at SDCC for two years between 2009 and 2011, making her very familiar with the SDCC program, personnel, and composition of the student body.  Reed testified that most of the students at SDCC had significant behavioral issues.  (Doc. No 19-20 at 8; AR 910.)  She explained that every day she was on campus at least one child had to be physically restrained by staff due to noncompliant, disruptive behavior.  (Id.)  The District argues that the ALJ impermissibly permitted Reed's testimony based on her experience at SDCC 14 years ago, (Doc. No. 23 at 16), but the ALJ found persuasive Reed's testimony that SDCC had not changed much since the time she worked there based on her current and ongoing professional relationship with the SDCC principal.  (Doc. No 19-20 at 8; AR 910.)  Again, the Court declines to reweigh Reed's testimony.

By contrast, the ALJ did not find Molina or Hazelwood very persuasive or credible.  (Doc. No. 19-20 at 9; AR 911.)  The ALJ discounted Molina's testimony regarding SDCC because SDCC was not one of the NPS to which he was assigned and Molina "visited SDCC only after he offered Student placement there."  (Doc. No. 19-20 at 7; AR 909.).  In particular, the ALJ cited Molina's attempt to recant his prior testimony – where he opined

that SDCC was a more restrictive school than Winston or Excelsior – as further rational for determining his testimony was unsupported and unpersuasive.  (Doc. No. 19-20 at 6; AR 908.)  Regarding Hazelwood, the ALJ did not find Hazelwood's testimony regarding SDCC persuasive because "she had not been to SDCC in multiple years and did not testify with specificity about its student body, program, or campus."  (Doc. No. 19-20 at 7; AR 909.)  The District argues that the ALJ overlooked the fact that Hazelwood "was the only witness who testified as to being familiar with ALL of the NPS in the area" and the ALJ improperly questioned why it took Hazelwood two years to earn a particular administrative credential.  (Doc. No. 23 at 14–15 (emphasis in original).)  The District fails to explain how Hazelwood's familiarity with all the NPS in the San Diego area revitalizes testimony about a particular NPS—SDCC—that the ALJ found unpersuasive.  Likewise, the ALJ's question clarifying Hazelwood's administrative credential was not improper.  Accordingly, the Court rejects the District's arguments regarding the ALJ's witness credibility determinations.

### 3.  The ALJ's Alleged Bias

Finally, Defendant argues that the ALJ was biased and failed to appear neutral during the hearing.  (Doc. No. 23 at 14.)  "ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased."  Haseltine v. Astrue, 668 F. Supp. 2d 1232, 1234 (N.D. Cal. 2009).  To show bias and rebut this presumption, the District must "show[] [a] conflict of interest or some other specific reason for disqualification."  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).  The burden of showing bias rests with the District.  Id.  "[J]udicial rulings alone almost never constitute a valid basis for a bias."  Liteky v. United States, 510 U.S. 540, 555 (1994).  Further, the District must show that "the ALJ's actions were so extreme as to display clear inability to render fair judgment."  G.M. ex rel. Marchese v. Drycreek Joint Elementary Sch. Dist., No. 2:10-CV-00944-GEB, 2012 WL 3913403, at *11 (E.D. Cal. Sept. 7, 2012) (internal citations omitted).

The District argues that the ALJ failed to appear neutral during the hearing and improperly inserted her opinion into the decision by writing that "Molina's remark to

Mother about the Winston School not being therapeutic was curious because no one on the IEP team had opined Student needed a more therapeutic program than the one offered at Excelsior." (Doc. No. 23 at 14; Doc. No. 19-19 at 41; AR 902.) However, the record directly supports the ALJ's statement. At the hearing, Molina testified that no one on K.O.'s IEP team had indicated to him that she needed a more therapeutic environment in the November or December 2021 IEP meetings. (Doc. No. 19-20 at 122; AR 1024:1-4.) Accordingly, the ALJ's statement does not show evidence of bias. Moreover, the District has not demonstrated that the ALJ's actions were "so extreme as to display clear inability to render fair judgment." Rather, the District disagrees with the ALJ's review of the factual record and credibility determinations. Therefore, the District has failed to carry its burden that the ALJ was biased.

**B.**   **Whether the District Impermissibly Predetermined Placement at SDCC**

Turning to the merits of this appeal, the District claims that the ALJ erred in two ways when she found the District predetermined its offer of education placement for K.O. First, the District contends that the ALJ misinterpreted and misapplied the law regarding educational placement. Second, the District argues that the ALJ ignored relevant evidence presented at the hearing showing that the District did not predetermine its offer of placement at SDCC. (Doc. No. 23.)

The District claims that the ALJ misinterpreted and misapplied the law regarding educational placement. (Id. at 19.) Specifically, the District argues that no change in K.O.'s educational placement occurred because SDCC and Excelsior are both NPS providers and represent "the same [placement] on the continuum of alternative placements." (Id. at 25.) Plaintiff contends that the ALJ correctly applied the law and the District's offer of SDCC was a change in placement. (Doc. No. 26 at 9–10.)

The Ninth Circuit instructs that "'educational placement' means the general educational program of the student." N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ., 600 F.3d 1104, 1116 (9th Cir. 2010). "[U]nder the IDEA, a change in educational placement relates to whether the student is moved from one type of

program—i.e., regular class—to another type—i.e., home instruction. A change in the educational placement can also result when there is a significant change in the student's program even if the student remains in the same setting." Id.; see also Cal. Code Regs. tit. 5, § 3042 (defining educational placement as a "unique combination of facilities, personnel, location or equipment necessary to provide instructional services to an individual with exceptional needs, as specified in the IEP, in any one or a combination of public, private, home and hospital, or residential settings").

"Under certain circumstances, a transfer from one school to another may be considered a change in placement." Melodee H. ex rel. Kelii H. v. Dep't of Educ., State of Hawaii, No. CIV.07-000256HG-LEK, 2008 WL 2051757, at *7–8 (D. Haw. May 13, 2008) (cleaned up). A transfer from one school to another may be considered a change in placement, where, as here, "there is evidence that placing the student at a particular institution could be emotionally, educationally, and psychologically detrimental." Id. at 8.

Here, the ALJ properly construed the District's offer of SDCC as a change in Plaintiff's educational placement. The ALJ found credible Leyva and Reed's testimony that students at SDCC regularly exhibited loud, aggressive, and maladaptive behaviors. It is undisputed that Plaintiff's anxiety is exacerbated by exposure to the maladaptive behaviors of other children. Leyva and Reed both opined that exposure to the students at SDCC would increase Plaintiff's anxiety and would cause Plaintiff significant educational and social/emotional regression. Moreover, the record supports the ALJ's finding that SDCC was an "extremely controlled environment, far removed from the more typical school experience offered by Excelsior Academy and Winston School." (Doc. No. 19-20 at 15; AR 917.) Reed testified that most of the students at SDCC had significant behavioral issues and that K.O. never exhibited negative behaviors that required such a restrictive environment like SDCC. And Leyva opined that there was no indication that K.O. required such a structured educational program like SDCC to access her education.

In her decision, the ALJ disagreed with the District's position that it had the sole authority to choose, without parents' collaboration, the provider of instruction and services

for Plaintiff, including the specific NPS offered to her.  (Doc. No. 19-20 at 14, AR 916.)
She reasoned that "[t]he difference between various nonpublic schools is significant."
(Doc. No. 19-20 at 15; AR 917.)  The Court agrees.  As the ALJ put it, "not all nonpublic
schools are the same, and can be vastly different.  For this reason, a collaborative discussion
of the child's individual academic, behavioral, and social emotional needs and which
nonpublic school can meet those needs, is required."  (Doc. No. 19-20 at 14; AR 916.)
Because the District's offer of SDCC constituted a change in educational placement, the
Court does not reach the District's argument that "[w]hen the special education and related
services offered to a Student have not changed, and merely the provider and location is in
dispute, there can be no pretermination [sic] as a matter of law."  (Doc. No. 23 at 20.)

    The District also argues that the ALJ erred in finding that its offer of placement at
SDCC was "predetermined."  (Doc. No. 19-20 at 17; AR 919.)  The District contends that
it did not predetermine its offer of SDCC and asserts that the ALJ ignored evidence and
testimony that the District considered Plaintiff's preferred school placement, Winston, but
the District ultimately concluded Winston was an inappropriate option for K.O. and could
not implement K.O.'s IEP.  (Doc. No. 23 at 22.)  Plaintiff asks this Court to uphold the
ALJ's decision regarding predetermination.  (See Doc. No. 22 at 5.)

    "Predetermination occurs when an educational agency has made a determination
prior to an IEP meeting, including when it presents one educational placement option at
the IEP meeting and is unwilling to consider other alternatives."  Z.F. v. Ripon Unified
Sch. Dist., No. 2:11-CV-02741-KJM, 2013 WL 127662, at *6 (E.D. Cal. Jan. 9, 2013)
(citing Deal v. Hamilton Cnty. Bd. of Educ., 392 F.3d 840, 858 (6th Cir. 2004)).  In other
words, "there must be evidence the state has an open mind and might possibly be swayed
by the parents' opinions and support for the IEP provisions they believe are necessary for
their child."  R.L. v. Miami-Dade Cnty. Sch. Bd., 757 F.3d 1173, 1188 (11th Cir. 2014).
A school district cannot arrive at an IEP meeting with a "take it or leave it" offer.  Ms. S.
ex rel. G. v. Vashon Island Sch. Dist., 337 F.3d 1115, 1131 (9th Cir. 2003) (superseded by
statute on other grounds).  However, a parent's "right to provide meaningful input is simply

not the right to dictate an outcome."  White ex rel. White v. Ascension Parish Sch. Bd., 343 F.3d 373, 380 (5th Cir. 2003).

The Court agrees with the decision below.  The record before this Court supports the ALJ's conclusion that the District predetermined its offer of SDCC.  The facts cited by the District that the ALJ allegedly "left out" do not undermine the ALJ's decision.  The ALJ "reasonably inferred that Molina decided before the [January 24, 2022] meeting to offer placement at SDCC" because no one beside Molina mentioned the need for an embedded therapeutic program for K.O.  (Doc. No. 19-20 at 2; AR 904.)  The ALJ further supported her conclusion regarding predetermination with the fact that when the IEP team unanimously expressed the opinion that SDCC was an inappropriate NPS for Plaintiff, Molina did not offer or suggest other placements for the team's consideration.  This fact reasonably supports the conclusion that the District was impermissibly wedded to placing K.O. at SDCC.  Further, at the January 24, 2022 IEP meeting, Molina failed to respond to the IEP team's concerns regarding Plaintiff's anxiety and the fact that SDCC may increase her anxiety.  Molina did not waiver on his decision to offer SDCC when confronted with these facts regarding K.O.'s disabilities.  Accordingly, the ALJ properly found that the District's offer of SDCC was a "take it or leave it" offer and constituted a procedural violation of the IDEA.

**C.    Whether the ALJ's Erred in Declining to Address Issue 2**

In her decision, the ALJ declined to decide whether the District denied K.O. a FAPE by offering her placement at SDCC.  The ALJ reasoned that because the District predetermined its offer of placement, which resulted in a denial of a FAPE, there was no legally appropriate substantive offer of a FAPE in K.O.'s November 15, 2021 IEP. Plaintiff argues that the ALJ's failure to address Issue 2 has left her without an educational placement because K.O.'s last agreed upon NPS, Excelsior, no longer exists.  (Doc. No. 22 at 11.)  Accordingly, Plaintiff asks this Court to find that the District's offer of SDCC denied K.O. an FAPE, and further argues that the Court should find that Winston offers K.O. a FAPE.

The ALJ did not err when she declined to address Issue 2. In determining whether a student has received a FAPE in compliance with the IDEA, courts conduct both a procedural and substantive inquiry. <u>Rowley</u>, 458 U.S. at 206–07. However, when a court identifies a procedural violation that denied a student a FAPE, it need not address the second substantive prong of the inquiry. <u>L.J. by & through Hudson v. Pittsburg Unified Sch. Dist.</u>, 850 F.3d 996, 1003 (9th Cir. 2017) (citing <u>Doug C. v. Haw. Dep't of Educ.</u>, 720 F.3d 1038, 1043 (9th Cir. 2013)). A child is denied a FAPE when procedural inadequacies result in the loss of an educational opportunity, or seriously infringe on the parents' opportunity to participate in the IEP formulation process. <u>Id.</u>

Here, the Court affirms the ALJ's determination that the District seriously infringed on Parents' opportunity to participate in the IEP formulation process when it predetermined its offer of placement at SDCC before the January 24, 2022 IEP meeting. The preponderance of the evidence supports the ALJ's conclusion that Molina effectively shut down discussion about what NPS provider could provide K.O. with a FAPE. This procedural violation resulted in denying K.O. a FAPE in violation of the IDEA. Accordingly, the ALJ correctly reasoned that she did not need to address Issue 2 because the November 15, 2021 IEP was tainted by the District's predetermined offer of SDCC. The ALJ cited the relevant legal authority, quoted above, when she declined to address Issue 2. (Doc. No. 19-20 at 18; AR 920.) Accordingly, the Court does not disturb the ALJ's conclusion with respect to this issue.

**D.**  **<u>Whether the ALJ Erred in Awarding Reimbursement to Plaintiff</u>**

The District claims the ALJ erred when she awarded reimbursement to Plaintiff for Parents' private placement at Winston. Courts have broad equitable powers to remedy a school district's failure to provide a FAPE to a disabled child. 20 U.S.C. § 1415 (i)(2)(C); <u>Ashland Sch. Dist. v. Parents of Student E.H.</u>, 587 F.3d 1175, 1183 (9th Cir. 2009) ("When a district court hears an appeal from a state hearing officer, it exercises broad discretion to craft relief . . . ."). Parents who have unilaterally placed their child in a private school are entitled to reimbursement only if a court concludes "(1) that the public placement violated

the IDEA, and (2) the private school placement was proper under the IDEA." <u>C.B. ex rel.</u> <u>Baquerizo v. Garden Grove Unified Sch. Dist.</u>, 635 F.3d 1155, 1159 (9th Cir. 2011) (internal citation omitted). "If either criteria [sic] is not met, the parent or guardian may not obtain reimbursement." <u>Id.</u> (internal citation omitted). A certified nonpublic school placement is proper if it "provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit a child to benefit from instruction." <u>Id.</u> "If both criteria are satisfied, the district court then must exercise its 'broad discretion' and weigh 'equitable considerations' to determine whether, and how much, reimbursement is appropriate." <u>Id.</u> (internal citation omitted). "In making the reimbursement calculus, 'courts may consider any relevant factor, including the reasonableness of the private tuition, and the conduct of parents in the IEP formulation process.'" <u>K.P. by & through S.K. v. Dep't of Educ.</u>, No. 22-CV-00267-DKW-WRP, 2023 WL 2930568, at *4 (D. Haw. Apr. 13, 2023), <u>appeal dismissed sub nom.</u> <u>K. P. v. Dep't of</u> <u>Educ.</u>, No. 23-15705, 2023 WL 5092786 (9th Cir. July 11, 2023) (internal citation omitted).

Here, the ALJ properly determined that Parents established both prongs of the first step. The District denied Plaintiff a FAPE when it substantially interfered with Parents' procedural rights under the IDEA by predetermining its offer of SDCC. In this instance, placement at SDCC would have violated the IDEA. Moreover, the preponderance of the evidence supports the ALJ's conclusion that Parents acted reasonably by placing K.O. at Winston and that K.O. received an educational benefit at Winston. From March 1, 2022 to the end of the 2022 school year, K.O. received As, Bs, and Cs, in grade-level curriculum. (Doc. No. 19-20 at 606; AR 1501.) Reed and Mother testified that K.O. was doing well at Winston, receiving counseling, speech, and occupational therapy services, and making friends. (Doc. No. 19-20 at 22; AR 924; Doc. No. 19-20 at 606–608; AR 1501–1503.)

The District argues that the ALJ erred in determining that Winston constituted a proper placement because Reed testified that Winston is not implementing K.O.'s IEP. (Doc. No. 23 at 29.) However, at the time, Winston was not under any obligation to

implement K.O.'s IEP as a privately placed student.  This fact alone does not undermine the ALJ's conclusion that Winston provided K.O. with an educational benefit.  C.B., 635 F.3d at 1159 ("To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential.")  Furthermore, Reed testified at the hearing that Winston has the resources to implement K.O.'s November 21, 2021 IEP.  (Doc. No. 19-20 at 21; AR 923.)

Plaintiff argues that the ALJ erred in calculating the reimbursement award.  (Doc. No. 22 at 20–21.)  Plaintiff claims that "the ALJ capped the award at $14,990."  (Id.)  Plaintiff asserts that "the ALJ's award was supposed to cover tuition, related services, and mileage for [March 1, 2022 through the end of the 2022 extended school year], however, due to the cap the ALJ placed on the award Parents were not fully reimbursed."  (Id. at 21.)  Plaintiff misreads the ALJ's decision.  The $14,900 award was not a cap on the total reimbursement, but rather the maximum amount the District must reimburse Plaintiff "for tuition at the Winston School."  (Doc. No. 19-20 at 24; AR 926.)  At the hearing, Plaintiff submitted evidence that she had paid Winston approximately $11,890 for tuition costs as of May 7, 2022.  (Doc. No. 19-6 at 32; AR 565.)  Considering that there were only a few more tuition payments due between May 7, 2022 and the end of the 2022 extended school year, the ALJ's maximum award of $14,990 for tuition expenses was reasonable.

The ALJ made clear in her decision that the District "will also reimburse Parents for the costs of related services . . . at the rates stated in the private pay agreement dated April 21, 2022" and "will also reimburse Parents for the cost of the mileage for one round trip between home and school . . . for each day Parents drove Student to and from [Winston]."  (Doc. No. 19-20 at 26; AR 928.)  The ALJ's award for related services and mileage were not included in the $14,990 maximum award for tuition.  Rather, the ALJ indicated that reimbursement of related services and mileage were subject to proof of what Parents actually paid through the 2022 extended school year.  The Court's interpretation of the ALJ's decision is further supported by the fact that the ALJ numbered her reimbursement awards separately.  (Doc. No. 19-20 at 27; AR 929.)  The first award for $14,990 pertained

to tuition and the second award included the related services and mileage costs.  (Doc. No. 19-20 at 27–28; AR 929–930.)  The ALJ did not "cap" Plaintiff's reimbursement award as Plaintiff claims.  Accordingly, the ALJ did not err in calculating the reimbursement award from March 1, 2022 to the end of 2022 extended school year.  If they have not already done so, the Court orders the District to reimburse Plaintiff for tuition, related services, and transportation costs incurred for Parents' private placement at Winston from March 1, 2022 to the end of the 2022 extended school year, in accordance with the ALJ's decision.

## E.   Plaintiff's Request for Additional Remedies

Next, the Court turns to Plaintiff's request to award placement at Winston.  "[O]nce a court holds that the public placement violated [the] IDEA, it is authorized to grant such relief as the court determines is appropriate."  Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 15–16 (1993) (citation omitted).  The ALJ did not reach the issue of whether Winston would substantively comply with the IDEA.  However, the Court concludes that justice would not be served by remanding this issue to the ALJ and further delay resolution of K.O.'s educational placement.  See Anchorage, 689 F.3d 1047 at 1057.  In light of the extensive record on appeal and the fact that Plaintiff's former school, Excelsior, no longer exists, the Court, in its discretion, determines that the evidence supports awarding K.O. educational placement at Winston.

To provide a FAPE, the educational agency must ensure that the child's IEP is "reasonably calculated to enable the child to receive educational benefits."  Rowley, 458 U.S. at 207.  A state or local educational agency satisfies the "educational benefit" standard "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction."  Id. at 203.  The Court agrees with Plaintiff that Winston confers K.O. a FAPE.  Winston is a NPS certified by the California Department of Education and accredited to award high school diplomas by the Western Association of Schools and Colleges.  (Doc. No. 19-20 at 377–378; AR 1272–1273.)  Winston employs credentialed special education teachers and trained therapists, psychologists, and counselors who can adequately meet K.O.'s educational and

social/emotional needs.  (Id.)  Moreover, the record supports the conclusion that K.O. did well at Winston.  (Doc. No. 19-20 at 395–98; AR 1290–93.)  She is working on grade level curriculum with some supplemental instruction, engaging in class discussions, receiving counseling, occupational therapy, and speech language services, and making friends.  (Id.; see also Doc. No. 19-20 at 607; AR 1502.)  Further, the ALJ concluded that Winston provided K.O. with an educational benefit and found that her needs were met at the school. (Doc. No. 19-20 at 22; AR 924.)  Accordingly, the Court awards K.O. educational placement at Winston for the IEP dated November 15, 2021 as well as prospective placement at Winston.

Plaintiff also requests that the Court award Plaintiff reimbursement for Parents' private placement at Winston for the 2022-2023 and 2023-2024 school years.  (Doc. No. 22 at 21 n. 6.)  Plaintiff claims she has incurred the following expenses for tuition, related services, and mileage: $48,346.81 for the 2022-2023 school year and $32,750 for the current 2023-2024 school year.  (Doc. No. 22-5 at 2, Declaration of Kelly Ogawa ("Ogawa Decl.").)  In a separately filed pleading, the District objects that by submitting evidence of costs incurred for subsequent school years, Plaintiff improperly attempts to supplement the administrative record.  (Doc. No. 25.)  Plaintiff moves to strike the District's objection, arguing that the objection is an unauthorized pleading and severely prejudices Plaintiff. (Doc. No. 27.)

The Ninth Circuit construes "additional" evidence to mean "supplemental" evidence.  Ojai, 4 F.3d at 1471.  Courts, in their discretion, may permit additional evidence for a variety of reasons, including "'gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing.'"  Id. at 1473 (quoting Town of Burlington v. Dep't of Educ., 736 F.2d 773, 790 (1st Cir. 1984)).  "'The starting point for determining what additional evidence should be received . . . is the record of the administrative proceeding.'"  Id. (quoting Town of Burlington, 736 F.2d at 790).  The Ninth Circuit makes clear that courts

must consider additional evidence that is non-cumulative, relevant, and otherwise admissible. <u>E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Off. of Admin. Hearings</u>, 652 F.3d 999, 1005 (9th Cir. 2011); <u>N. N. v. Mountain View-Los Altos Union High Sch.</u> <u>Dist.</u>, No. 20-CV-08010-VKD, 2021 WL 2808973, at *2 (N.D. Cal. July 6, 2021); <u>see also</u> 20 U.S.C. 20 U.S.C. § 1415(i)(2)(C)(ii).  However, courts "'must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo.'" <u>Ojai</u>, 4 F.3d at 1473 (quoting <u>Town of Burlington</u>, 736 F.2d at 791).

In its discretion, the Court will supplement the administrative record with evidence of the expenses Plaintiff incurred for Parents' private placement of K.O. at Winston for the subsequent school years.  Indeed, the District acknowledges that "a decision holding that the Winston School was an appropriate prospective placement for K.O. . . . would have obligated the District to pay the cost of [her] on going attendance at Winston."  (Doc. No. 24 at 6.)  Because the Court determines that Parents' placement of K.O. at Winston is an appropriate prospective placement and confers K.O. with an educational benefit, the Court also awards Plaintiff reimbursement for the 2022-2023 and 2023-2024 school years.  Parent's reimbursement award is subject to Parents providing the appropriate records to the District of the costs incurred for tuition, related services, and transportation.

## F.   **Attorneys' Fees and Prevailing Party Status**

In her moving papers, Plaintiff argues that she is entitled to an award of reasonable attorney's fees as the prevailing party in both the underlying administrative case and the current matter before this Court.  (Doc. No. 22 at 22.)  In a separately filed objection, the District argues that Plaintiff's request for fees is premature and claims that there must be a final adjudication of the dispute before the Court may consider prevailing party status and reasonable attorneys' fees.  (Doc. No. 24.)   The District also asks this Court for an opportunity to conduct limited discovery and brief Plaintiff's entitlement to fees.  Moreover, the District claims that even if the Court determines that Plaintiff is the prevailing party, the Court must significantly reduce the amount of fees awarded.  In response, Plaintiff argues that the Court should strike the District's objection to their fee

award as a "rouge and unauthorized" pleading.  (Doc. No. 27.)

Section 1415(i)(3)(B)(i)(I) of the IDEA provides: "[i]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I); Kletzelman v. Capistrano Unified Sch. Dist., 91 F.3d 68, 70 (9th Cir. 1996).  The Ninth Circuit holds that an award of attorneys' fees is available at the administrative level.  Barlow-Gresham Union High Sch. Dist. No. 2 v. Mitchell, 940 F.2d 1280, 1284 (9th Cir. 1991).  A prevailing party for the purpose of awarding attorneys' fees is a party which "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit."  Parents of Student W. v. Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1498 (9th Cir. 1994) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  Such success results in a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Id. (quoting Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792–93) (1989)).

Here, Plaintiff prevailed on several significant issues at the administrative hearing, including whether the District predetermined its offer of placement and whether Plaintiff was entitled to reimbursement for tuition, related services, and transportation costs incurred due to Parents' private placement at Winston.  The ALJ deemed Plaintiff the prevailing party as to the predetermination issue.  Indeed, this Court affirms the ALJ's decision in its entirety and awards Plaintiff additional remedies consistent with the evidence in the record and in the interests of judicial efficiency and justice.  Consequently, the Court deems Plaintiff the prevailing party both at the administrative level and in this action before this Court.  Accordingly, the Court concludes that Plaintiff is entitled to reasonable attorneys' fees incurred in both proceedings.

In calculating an award of reasonable attorneys' fees in cases brought under the IDEA, courts use the lodestar calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See Taylor H. v. Dep't of Educ., No. CV 09-00020 SOM-LEK, 2010 WL

157481, at *3 (D. Haw. Jan. 15, 2010), <u>report and recommendation adopted sub nom.</u> <u>Taylor H. ex rel. Todd H., Elaine H. v. Dep't of Educ., State of Hawaii</u>, No. CV09-00020SOM-LEK, 2010 WL 582123 (D. Haw. Feb. 17, 2010). "Under the lodestar method, the district court multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." <u>Gonzalez v. City of Maywood</u>, 729 F.3d 1196, 1202 (9th Cir. 2013) (internal quotation omitted). The Court may "exclude those hours for which it would be unreasonable to compensate the prevailing party." <u>Id.</u> at 1203 (citation omitted). The product of this computation (the "lodestar figure") is a presumptively reasonable fee. <u>Id</u>. Once the Court reaches the lodestar figure, it may adjust the award upward or downward based on the <u>Kerr</u> factors.[6] <u>Gonzalez</u>, 729 F.3d at 1202 (citation omitted); <u>see also</u> <u>Hood River Cnty. Sch. Dist. v. Student</u>, No. 3:20-CV-1690-SI, 2022 WL 1153986, at *9 (D. Or. Apr. 19, 2022) (noting that the <u>Kerr</u> factors apply to attorneys' fees petitions in IDEA actions). "At the heart of the Court's determination is whether Plaintiff's accomplishments in this case justify the fee amount requested, while remaining mindful that there is no precise rule or formula for making these determinations." <u>T.B. v. San Diego Unified Sch. Dist.</u>, 293 F. Supp. 3d 1177, 1203 (S.D. Cal. 2018) (internal citations omitted).

The Court agrees with Defendant that further briefing addressing Plaintiff's reasonable attorneys' fees is warranted. The Court orders Plaintiff to file a motion for attorneys' fees on or before **May 7, 2024**. Defendant must file its opposition to Plaintiff's

---

[6] The <u>Kerr</u> factors include the following: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975).

motion on or before **May 21, 2024**.  Plaintiff must file her reply in support of her motion on or before **May 28, 2024**.  The Court instructs the parties to address the <u>Kerr</u> factors in their briefing.  With the benefit of this Order and the parties' briefing regarding attorneys' fees, the Court refers the parties to the magistrate judge for a status and settlement conference, to occur at the magistrate judge's discretion on or before **June 28, 2024**.  The Court directs the parties to meet and confer, and work to resolve the attorneys' fees issue and any other remaining issues.  The magistrate judge may conduct the status and settlement conference through any reasonable means, including an in-person, telephonic, or video conference.  If resolution is unsuccessful, the Court reserves the right, if appropriate and warranted, to refer the attorneys' fees issue to the magistrate judge for a report and recommendation.

## **CONCLUSION**

For the foregoing reasons, the Court affirms the ALJ's decision and, pursuant to its discretion, grants Plaintiff additional remedies pursuant to this Order.  The Court awards K.O. placement at Winston.  The Court instructs the District to reimburse Parents for K.O.'s placement at Winston consistent with this decision.  Last, the Court deems Plaintiff the prevailing party.  Accordingly, the Court denies the District's cross-motion for summary judgment and denies Plaintiff's motion to strike.

**IT IS SO ORDERED.**

DATED: April 23, 2024

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT